**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Allan Costa, | No. CV-15-00315-PHX-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| Maxwell & Morgan PC, | |
| Defendant. | |

Before the court is Defendant Maxwell & Morgan's Motion to Dismiss (Doc. 10). For the following reasons, the court will grant the Motion in part and deny it in part.

## I.       BACKGROUND

On August 3, 2004, Plaintiff Allan Costa purchased a condominium in Chandler, Arizona, that belonged to the Cambric Courts, Inc. Homeowners Association ("Association"). (Doc. 1 at 5.)  Under the Declaration of Covenants, Conditions and Restrictions that Costa signed at the time of sale ("Declaration"), each owner was required to pay a "proportionate share of the expenses of the administration and operation of the Common Elements" of the Association. (Doc. 21-1 at 26-27.)  Maxwell & Morgan asserts via exhibits to its Motion—and Costa does not dispute in his Response (Doc. 16)—that the Declaration also provides, "If any Owner shall fail or refuse to make any payment for Common Expenses within thirty (30) days of the due date, the amount thereof, together with interest thereon at the rate of twelve percent (12%) per annum from

1   the due date of such payment, a reasonable late charge not exceeding twenty five percent

2   (25%) of the amount of such payment as determined by the Board, costs and reasonable

3   attorneys' fees, shall constitute a lien on such Owner's Unit and on any rents and

4   proceeds therefrom."  (Doc. 10-1 at 8; *see* Doc. 16.)

5          On November 25, 2013, Maxwell & Morgan, a law firm acting on behalf of the

6   Association, filed an action against Costa in the Maricopa County Justice Court.  (Doc.

7   21-1 at 2, 6.)  That action sought $2,618.20 in unpaid assessments and an acceleration of

8   Costa's anticipated assessments for 2014, which totaled $1,862.40.  (*Id.* at 6.)  Costa did

9   not appear, and on August 12, 2014, the Justice Court entered a default judgment

10  ("Default Judgment") awarding Maxwell & Morgan principal in the amount of

11  $4,838.20, "[p]lus accruing assessments of $2,100.00 per annum, plus a $15.00 monthly

12  late charge, plus fines, or such greater amount as the Association may assess in the future,

13  commencing January 1, 2015, subject to the right to accelerate per statute, until all

14  amounts due and owing under this Judgment are paid in full."  (*Id.* at 9-10.)  This amount

15  was to accrue interest at twelve percent, in accordance with the Declaration.  (*Id.* at 10.)

16  The Default Judgment also awarded $797.50 in attorneys' fees and $332.48 in costs, as

17  well as an unspecified amount for "costs and reasonable attorney fees incurred by [the

18  Association] after submission of this judgment for entry by the Court in collecting the

19  amounts listed in this Judgment."  (*Id.*)

20         In a letter dated September 9, 2014, Maxwell & Morgan informed Costa that

21  "Judgment ha[d] been entered against [him] by the Highland Justice Court of the State of

22  Arizona in the principal amount of $4,838.20, accruing at the rate of $2,100.00 per

23  annum, plus fines, beginning January 1, 2015, interest, attorney fees of $797.50, costs of

24  suit of $332.48, plus accruing attorney fees and costs."  (*Id.* at 13.)  The letter announced

25  that, pursuant to A.R.S. § 12-1598.03, it served as a demand for "payment of the amount

26  due under the Judgment totaling $5,968.18, plus accruing interest, assessments, fines,

27  costs and attorney fees."  (*Id.*)  It gave Costa ten days to contact Maxwell & Morgan so

28  he could agree to make payment.  (*Id.*)  "If you fail to respond to this correspondence,"

the letter warned, "the Association has instructed our firm to proceed to exhaust all of its judicial remedies in resolving this matter, including garnishment of your earnings or other sources of income, a debtor's examination and/or Sheriff's execution sale of your personal or real property." (*Id.*)

Costa mailed Maxwell & Morgan a cashier's check for $5,968.18 on November 6, 2014, along with a request for a satisfaction of judgment and lien release. (*Id.* at 15-16.) Two weeks later, Maxwell & Morgan returned the check to Costa because it did not "represent payment in full as you indicate." (*Id.* at 18.) Maxwell & Morgan's letter also informed Costa that on October 10, 2014, the firm had filed a lien foreclosure suit against him after he "failed to make efforts . . . to resolve the delinquency" resulting from the Default Judgment. (*Id.*) The complaint in that Superior Court action alleged that as of October 10, 2014, Costa owed the Association a principal balance of $6,421.43, as secured by a lien on his property. (*Id.* at 21.) The Association requested a judgment against Costa as follows:

> c.    Declaring that the Association's lien is not subject to any homestead filing pursuant to the express language of A.R.S. § 33-1256(C);
> d.    Foreclosing the interests of [Costa], and all persons claiming under them, and forever barring [Costa] from any or all right, title, claim, interest or lien in and to the Property or with respect thereto, except such rights of redemption as they may have by law;
> e.    Declaring that the lien be foreclosed and a special execution be issued to the Sheriff of Maricopa County, Arizona, directing him to seize and sell the Property as under execution in partial satisfaction of all amounts due Plaintiff as aforesaid;
> f.    Directing that at the sale it shall not be necessary that any personal property be present at the place of sale and that the Property, together with any and all personal property, be sold at public auction, either separately or as a unit, according to law, and that Plaintiff may be the purchaser at such sale;
> g.    Declaring that the redemption period is thirty (30) days, in accordance with A.R.S. § 12-1282, as amended, if the Court determines that the Property is not now and has not been used at any time pertinent hereto primarily for agricultural or grazing purposes and has been abandoned; otherwise, for a determination that the redemption period is six (6) months[.]

(*Id.* at 23.)  The November 21, 2014 letter did not state how much Costa owed Maxwell & Morgan as of that date.  (*See id.* at 18.)  Costa alleges that he "was unaware of the Superior Court action at the time he tendered the check for $5,968.18."  (Doc. 1 at 7.)

Costa filed suit in this court on February 19, 2015, seeking damages under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., on behalf of himself and a class of similarly situated homeowners.  Maxwell & Morgan now moves to dismiss Costa's Complaint on the grounds that it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  For purposes of this Motion, the court will consider Costa's allegations only as they pertain to him personally.

## II.    LEGAL STANDARD

When considering a motion to dismiss, a court evaluates the legal sufficiency of the plaintiff's pleadings.  Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on "the lack of  a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To avoid dismissal, a complaint need include "only enough facts to state a claim for relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

On a motion to dismiss under Rule 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the non-moving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  However, the principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations.  *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).  Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Id.* To show that the plaintiff is entitled to relief, the complaint must permit the court to infer more than the mere possibility of misconduct. *Id.* If the plaintiff's pleadings fall short of this standard, dismissal is appropriate.

## III.  ANALYSIS

### A.  Count 1

Costa's first cause of action seeks relief under 15 U.S.C. § 1692g(a), which provides, "Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing— (1) the amount of the debt[.]" According to Costa, Maxwell & Morgan's "September 9 collection letter violates 15 U.S.C. § 1692g because it fails to state the amount of the debt and alludes to the existence of additional amounts above the face amount of the judgment sought to be collected." (Doc. 1 at 11.)

Maxwell & Morgan argues that the disclosure requirements of § 1692g(a) do not apply to the firm's September 9, 2014 letter because that letter was not "the initial communication" with Costa regarding his debt. Attached to Maxwell & Morgan's Motion is a copy of an October 9, 2013 letter the firm sent to Costa requesting a $2,012.62 payment for his "delinquent maintenance account." (Doc. 10-1 at 2.) A "Notice" appended to that letter contains the disclosures mandated by § 1692g(a). (*See id.* at 3.) In his Response, Costa asserts he "never received" that letter. (Doc. 16 at 10.) If Maxwell & Morgan can prove that it sent the October 9, 2013 letter to Costa, then its subsequent communication of September 9, 2014, may not be subject to § 1692g(a). *See Mahon v. Credit Bureau, Inc.*, 171 F.3d 1197, 1201 (9th Cir. 1999) ("We hold that section 1692g(a) requires only that a Notice be 'sent' by a debt collector. A debt collector need not establish actual receipt by the debtor."). But such factual determinations are inappropriate on a motion to dismiss. The Complaint implies, if it does not directly

- 5 -

allege, that the September 9, 2014 letter was Maxwell & Morgan's "initial communication" to Costa, and the first cause of action cannot be dismissed merely because Maxwell & Morgan disagrees with that factual assertion.

Even assuming the September 9, 2014 letter was the initial communication, Maxwell & Morgan asks the court to find that, as a matter of law, that letter "contain[s] . . . the amount of the debt," with the result that Costa's first cause of action fails to state a violation of § 1692g(a). In the Ninth Circuit, "the impact of language alleged to violate section 1692g is judged under the 'least sophisticated debtor' standard." *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988). "The objective least sophisticated debtor standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor. Most courts agree that although the least sophisticated debtor may be uninformed, naive, and gullible, nonetheless her interpretation of a collection notice cannot be bizarre or unreasonable." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1027 (9th Cir. 2012) (citations and internal quotation marks omitted).

Here, the least sophisticated debtor—and perhaps some debtors quite a bit more sophisticated than that—would have difficulty determining from the September 9, 2014 letter exactly how much money Maxwell & Morgan claimed to be owed. While the letter does make clear that Maxwell & Morgan is demanding "accruing attorney fees and costs," it gives no indication of the size of those fees and costs. Thus even a debtor who wished to pay those fees and costs at the same time he discharged the principal would have no way of knowing what size check to write. The "amount of the debt" is a moving target—visible only to Maxwell & Morgan, which has withheld the information Costa would need to take a fair shot. *Cf. Torrie v. Goodman Law Offices PC*, No. CV-13-02659-PHX-DGC, 2014 WL 5594452, at *5 (D. Ariz. Nov. 4, 2014) (finding debt collectors did not misrepresent amount of $3,755.36 default judgment where they sent "a letter stating that the amount of the debt was $3,810.36" but "clarified that the increase of $55 was due to a charge for sending the letter"). In addition, the letter fails to identify the

rate at which interest accrues.  It is even unclear to what body of principal the unspecified interest rate applies: the letter's second sentence suggests interest accrues on the entire $5,968.18 award, but the first sentence seems to say that interest will accrue only on "the principal amount of $4,838.20."  A "reasonable debtor" reading the September 9, 2014 letter could quite easily be deceived or misled into believing that the "amount of the debt" differs from whatever amount Maxwell & Morgan believed was due.  The Complaint states a claim for violation of § 1692g(a).

### B.     Count 2

Costa alleges that Maxwell & Morgan has violated 15 U.S.C. § 1692e, which forbids debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt."  That provision contains an expressly non-exhaustive list of the types of conduct that may qualify as "false, deceptive, or misleading."   15 U.S.C. § 1692e.  Like § 1692g(a) claims, alleged violations of § 1692e are assessed under the "least sophisticated debtor" standard. *Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109, 1119 (9th Cir. 2014).

Costa's second cause of action alleges various violations of § 1692e, which the court will address in turn.

### 1.     Amount of the debt

Costa alleges the September 9, 2014 letter is misleading because it "fails to specify the total amount due and/or increases the amount of the demand to include post-judgment attorneys fees and costs that have not been expressly awarded in a sum certain amount." (Doc. 1 at 12.)   This claim essentially restates Costa's § 1692g(a) cause of action, although its validity does not depend on whether the September 9, 2014 letter was Maxwell & Morgan's "initial communication."   As explained above, the September 9, 2014 letter could easily have misled the least sophisticated debtor as to the amount of payment Maxwell & Morgan was demanding.  This portion of Costa's second cause of action therefore states a claim under § 1692e.

### 2.      Attorneys' fees

According to the Complaint, Maxwell & Morgan violated § 1692e by "including language in default or uncontested judgments purporting to entitle them to recover reasonable attorneys' fees and costs incurred after the entry of the judgment, unilaterally determining the amount of those post-judgment attorneys' fees and costs that it is entitled to recover, and adding those amounts to the debts without any judicial oversight or involvement." (*Id.*)  Costa alleges that this conduct constitutes a violation of § 1692e(2), which provides that one example of "false, deceptive, or misleading" debt collection practices is the "false representation of— (A) the character, amount, or legal status of any debt."  To support this allegation, Costa asserts that "Arizona law does not authorize a judgment creditor to recover post-judgment fees and costs." (Doc. 1 at 12.)

As Maxwell & Morgan points out, this misstates the law.  "[I]t is well-settled in Arizona that '[c]ontracts for payment of attorneys' fees are enforced in accordance with the terms of the contract.'"  *Bennett Blum, M.D., Inc. v. Cowan*, 235 Ariz. 204, 206, 330 P.3d 961, 963 (Ct. App. 2014) (alterations in original).  When the "broad language" of a contractual attorneys' fees provision gives no indication of an intent to exclude fees for work done after entry of judgment, those fees are generally recoverable.  *See id.* at 207, 330 P.3d at 964 ("In their Rule 60(c) motion, appellants sought relief from the underlying judgment, and, in their motion to stay, appellants sought to delay execution of that judgment. . . . The trial court therefore had no discretion to refuse to award [appellee] attorney fees for appellants' Rule 60(c) motion and motion to stay under the contract.").  Like the contract in *Bennett Blum*, the parties' Declaration in this case speaks only of "costs and reasonable attorneys' fees" arising from unpaid assessments.  (*See id.*; Doc. 10-1 at 8.)  Maxwell & Morgan's request that the Justice Court award "accruing attorney fees and costs" (Doc. 21-1 at 6) under the Declaration is therefore not, by itself, "false, deceptive, or misleading."

That the request to the court was not unlawful, however, does not mean that Maxwell & Morgan was free to obtain those fees in whatever manner it pleased.

Maxwell & Morgan appears to believe that the Declaration's reference to "reasonable attorneys' fees" empowers the firm, in its sole discretion, to decide what amount is reasonable and then seek that amount under the authority of a previously entered judgment.  But Arizona law is clear that even when fees are awarded pursuant to an express contractual agreement, rather than statute, the prevailing party is not entitled to its fees unless a court has already determined that the specific amount that party seeks is reasonable.  *See Woliansky v. Miller*, 146 Ariz. 170, 172, 704 P.2d 811, 813 (Ct. App. 1985) ("[T]he contract contained a provision that 'the prevailing party shall be entitled to reasonable attorneys fees . . . from the party adjudged against.' The determination of the reasonable amount of attorney fees was peculiarly within the discretion of the trial court." (ellipsis in original)); *First Fed. Sav. & Loan Ass'n of Phx. v. Ram*, 135 Ariz. 178, 181, 659 P.2d 1323, 1326 (Ct. App. 1982) ("In the present case both the mortgage note with Catalina and the installment contract and deed of trust with First Federal contained contract clauses providing for an award of attorney's fees. . . . We find the award of attorney's fees to be justified and reasonable under the circumstances.").  A contractual attorneys' fees provision does not permit a prevailing party to award itself fees of whatever size it desires based on nothing more than its own say-so.

Here, the Default Judgment awarded the Association a specific fee amount for Maxwell & Morgan's work up until the date of judgment.  Although it is not reflected on the face of the judgment, the Justice Court must have determined that the $797.50 it awarded was a reasonable sum.  But the Justice Court made no such determination with respect to any specific amount of fees the Association might request in the future.  Instead, the court merely announced that the Association would be entitled to compensation for any money it paid its attorneys for attempting to collect the amounts in the Default Judgment.  Under well-established Arizona law, this latter portion of the Default Judgment was limited by an implicit, but obvious, proviso: the reasonableness of any award would have to be judicially blessed in advance.  Judgment remedies are not

1    available for that future attorneys' fees obligation until a future order of the court
2    quantifies that obligation in a stated amount.

3       It is not clear whether, or in what amount, Maxwell & Morgan has sought
4    attorneys' fees from Costa based on work performed after entry of the Default Judgment.
5    The firm's November 21, 2014 letter does not explain why Costa's $5,968.18 cashier's
6    check fails to provide "payment in full"; the deficiency might have resulted from unpaid
7    attorneys' fees, unpaid interest, or some other outstanding obligation.   But in his
8    Complaint, Costa alleges, "[u]pon information and belief," that "the $453.25 difference
9    between the amount of the Justice Court Judgment and the amount declared as the
10   'principal balance' due in the Superior Court complaint was comprised of unadjudicated
11   attorneys' fees and costs incurred after [Maxwell & Morgan] submitted the Justice Court
12   Judgment for the Court's execution."  (Doc. 1 at 8.)  If that allegation is correct, Maxwell
13   & Morgan, by demanding attorneys' fees not approved by a court, has made a "false
14   representation" as to "the character, amount, or legal status of any debt."  Costa has stated
15   a claim under § 1692e.

16        **3.**  **Foreclosure of personal property**

17      Arizona law provides that certain forms of personal property are exempt from
18   "execution, attachment, garnishment, replevin, sale or any final process issued from any
19   court or any other judicial remedy provided for collection of debts."   A.R.S. § 33-
20   1121(2); *see id.* § 33-1122 et seq.  The FDCPA bars "threat[s] to take any action that
21   cannot legally be taken."  15 U.S.C. § 1692e(5).  In light of these provisions, Costa next
22   alleges that Maxwell & Morgan engaged in "false, deceptive, and misleading
23   representations" when it "threaten[ed] to satisfy a foreclosure judgment out of [his]
24   personal property."  (Doc. 1 at 12.)  The Complaint does not specify whether the "threat"
25   in question was (1) the September 9, 2014 letter's statement that if Costa did not provide
26   payment, Maxwell & Morgan might seek a "Sheriff's execution sale of [his] personal or
27   real property" or (2) the Superior Court complaint's prayer for relief, which asks the
28   court to direct that at a sheriff's sale of Costa's property, "it shall not be necessary that

any personal property be present at the place of sale and that the Property, together with any and all personal property, be sold at public auction, either separately or as a unit, according to law, and that [the Association] may be the purchaser at such sale." Maxwell & Morgan, however, moves to dismiss only on the grounds that the filing of its Superior Court complaint was not unlawful under the FDCPA.  (*See* Doc. 10 at 12-13.)  The court will therefore address only that basis for the pending Motion.

Maxwell & Morgan argues that Costa may not obtain relief for any activity relating to the firm's lien foreclosure action because "strictly *in rem* relief is beyond the scope of the FDCPA."  (Doc. 10 at 5.)  No case cited by Maxwell & Morgan establishes such a blanket FDCPA exemption for in rem actions, and the text of the statute cannot bear such an interpretation.

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  In addition, "[f]or the **purpose of [15 U.S.C. § 1692f(6)],**" the term "debt collector" "also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."  *Id.*  The term "collection of any debts" is not defined in the statute, although the FDCPA provides that "debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  *Id.* § 1692a(5).

Several courts have held that security interests, such as deeds of trust, are not "debts" within the meaning of the FDCPA.  On this view, "Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property."  *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002).

That is, "the trustee possesses the power the sale [sic] which may be exercised after a breach of the obligation for which the transfer in trust of the interest in real property is security. Foreclosure by the trustee is not the enforcement of the obligation because it is not an attempt to collect funds from the debtor." *Id.* (citation omitted).  Accordingly, attempts to foreclose on mortgages or deeds of trust do not qualify as "debt collection."

The "legislative history of the FDCPA [supports] the proposition that mortgagees and their assignees, servicing companies, and trustee fiduciaries are not included in the definition of 'debt collector.'" *Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009).  In the mortgage foreclosure context, therefore, the holding of *Hulse* may have some merit.  *See id.*  But its rationale elevates form over substance and is therefore sufficiently at odds with the "broad remedial purpose of the FDCPA," *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1179 (9th Cir. 2006), that it cannot apply to security interests more broadly.  While a foreclosure action may technically be concerned only with an "interest in the property" that serves as collateral, all such actions are fundamentally attempts to collect on a debt.  The property interest grows out of and relies for its existence on the underlying debt.  The holder of the security interest seeks to foreclose on it only because the debtor has failed to repay his debt.  *Cf. Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013) ("In fact, *every* mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (*i.e.,* forcing a settlement) or compulsion (*i.e.,* obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt)." (emphasis in original)).  It would therefore make little sense to exclude Maxwell & Morgan's lien from the FDCPA's definition of a "debt."

Nevertheless, some courts have interpreted § 1692a(6) to mean that if a business' "principal purpose" is "the enforcement of security interests," that business is subject only to § 1692f(6), and not to other provisions of the FDCPA.  *See, e.g.*, *Jordan v. Kent Recovery Servs., Inc.*, 731 F. Supp. 652, 656-57 (D. Del. 1990).  If that interpretation

1    were correct, and if Costa had alleged that Maxwell & Morgan's principal purpose were

2    enforcing security interests, all of Costa's § 1692e claims would be legally deficient on

3    their face.  The court need not determine the validity of *Jordan*'s statutory construction,

4    however, as the Complaint does not allege that Maxwell & Morgan principally enforces

5    security interests—or that it principally collects debts, for that matter.  It does allege that

6    Maxwell & Morgan "files hundreds of collection actions every year and obtains

7    judgments, many by default or stipulation, against Arizona consumers and routinely

8    pursues the execution of those judgments after they are obtained" (Doc. 1 at 4), i.e., that

9    the firm "regularly collects or attempts to collect, directly or indirectly, debts owed or

10   due," § 1692a(6).   At oral argument, counsel for Costa asserted that Maxwell &

11   Morgan's principal purpose is collecting debts, not enforcing security interests.  Counsel

12   for Maxwell & Morgan denied the firm's principal purpose is collecting debts and said

13   she could not represent that the firm principally enforces security interests.  At this stage

14   of the proceedings, where a plaintiff's allegations must be accepted as true, there is no

15   basis for dismissing Costa's claims on the basis that Maxwell & Morgan principally

16   enforces security interests.  For purposes of this Motion, Maxwell & Morgan is subject to

17   all provisions of the FDCPA, and the court will therefore assess Costa's allegations on

18   the merits.

19          Maxwell & Morgan's Superior Court complaint requests a judgment declaring that

20   Costa's condominium, "together with any and all personal property, be sold at public

21   auction, either separately or as a unit, according to law, and that [the Association] may be

22   the purchaser at such sale."  (Doc. 21-1 at 23.)  Maxwell & Morgan does not contest that

23   it was without power to seize and sell Costa's personal property.  Instead, it asserts that a

24   "mere request for certain relief in pleadings filed with the court does not violate the

25   FDCPA."  (Doc. 10 at 13.)  Although "a statement in a pleading is supervised by the

26   court and monitored by counsel," *Argentieri v. Fisher Landscapes, Inc.*, 15 F. Supp. 2d

27   55, 62 (D. Mass. 1998), a prayer for relief can still, in some instances, be abusive for

28   FDCPA purposes.   The statute's list of "false, deceptive, or misleading" practices

explicitly includes a "threat to take any action that cannot legally be taken or that is not intended to be taken." § 1692e(5). Allowing debt collectors to inoculate themselves from liability by involving a court would hollow out this provision. The "least sophisticated debtor" could easily be misled by reading, in an official court document, that his personal property was at risk of execution. And the complaint's vague request that the sale be "according to law" would do little to correct the least sophisticated debtor's misapprehension. Costa has stated a claim under § 1692e.

### 4. Pursuing foreclosure after obtaining a prior judgment

Costa alleges Maxwell & Morgan further violated § 1692e by "filing foreclosure actions, obtaining default or uncontested foreclosure judgments, and executing or attempting to execute on default or uncontested foreclosure judgments where the unpaid principal balance of assessments includes amounts that were previously reduced to a money judgment and are secured by a judgment lien." (Doc. 1 at 12-13.) In Arizona, a debt merges into a judgment obtained to collect the debt, and the party that obtained the judgment cannot subsequently sue a second time on the underlying debt. *See C & J Travel, Inc. v. Shumway*, 161 Ariz. 33, 36-37, 775 P.2d 1097, 1100-01 (Ct. App. 1989). Notwithstanding the doctrine of merger, Maxwell & Morgan argues that its Superior Court action was proper because while the Justice Court action sought payment of Costa's assessments, i.e., a debt, the Superior Court complaint sought to enforce the interest that secured that debt.

Under Arizona's "election statute" for mortgages, "If separate actions are brought on the debt and to foreclose the mortgage given to secure it, the plaintiff shall elect which to prosecute and the other shall be dismissed." A.R.S. § 33-722. This statute, which "alters the traditional common law rule that a holder of a note secured by a mortgage has the right to sue on the note alone, to foreclose on the property, or to pursue both remedies at once," is "intended to protect the debtor from multiple suits and at the same time grant the creditor the benefit of the security." *Mid Kan. Fed. Sav. & Loan Ass'n of Wichita v. Dynamic Dev. Corp.*, 167 Ariz. 122, 126, 804 P.2d 1310, 1314 (1991). "However, the

1   reach of the statute, as applied to most mortgages, is quite limited." *Id.*  Specifically, "the
2   election statute does not preclude a subsequent foreclosure action after judgment on the
3   debt." *Id.*

4       Here, Maxwell & Morgan has not sued twice on the same underlying debt.  The
5   Justice Court complaint seeks relief for breach of the Declaration; the Superior Court
6   complaint requests foreclosure of the lien created by the Declaration and A.R.S. § 33-
7   1256(A).  The doctrine of merger is therefore inapplicable.  In addition, Maxwell &
8   Morgan did not file its Superior Court action until after the Justice Court had entered its
9   Default Judgment.  Under clearly established Arizona law, the election statute does not
10  bar Maxwell & Morgan's Superior Court action.  *See Torrie*, 2014 WL 5594452, at *4.
11  Dismissal of this part of Costa's Complaint is appropriate.

12          **5.      Seeking foreclosure of a primary residence**

13      Costa's final § 1692e claim[1] is predicated on A.R.S. § 33-1101(A).  That provision
14  reads, "Any person the age of eighteen or over, married or single, who resides within the
15  state may hold as a homestead exempt from attachment, execution and forced sale, not
16  exceeding one hundred fifty thousand dollars in value, any one of the following: . . . 2.
17  The person's interest in one condominium or cooperative in which the person resides."
18  According to Costa, Maxwell & Morgan disregarded this "homestead exemption" when it
19  sought, in its Superior Court action, to force the sale of his condominium.  Certain liens,
20  however, do not fall within the exemption and are therefore subject to execution and
21  forced sale.  A.R.S. § 33-1103(A).  Among the exceptions to the exemption is a
22  "consensual lien, including a mortgage or deed of trust, or contract of conveyance." *Id.*

23
24      [1] In his Response, Costa also argues that by filing the Superior Court action,
    Maxwell & Morgan violated the portion of A.R.S. § 33-1256(A) that permits foreclosure
25  of an assessment lien "only if the owner has been delinquent in the payment of monies
    secured by the lien, excluding reasonable collection fees, reasonable attorney fees and
26  charges for late payment of and costs incurred with respect to those assessments, for a
    period of one year or in the amount of one thousand two hundred dollars or more,
27  whichever occurs first." (*See* Doc. 16 at 14.)  But while it alleges Maxwell & Morgan
    "has undertaken an improper pattern and practice" of violating this provision, the
28  Complaint's second cause of action does not allege the firm did so with respect to Costa
    individually.  (*See* Doc. 1 at 13-14.)  Maxwell & Morgan therefore cannot move to
    dismiss such an allegation, and the court will not consider it here.

- 15 -

§ 33-1103(A)(1).  Nothing in the Complaint suggests Maxwell & Morgan's lien was not "consensual."  Indeed, it is difficult to see how the lien could be other than consensual, as it is expressly provided for in the Declaration that Costa signed upon purchase of his condominium.  Furthermore, liens created under A.R.S. § 33-1256, as Maxwell & Morgan's was, are not subject to A.R.S. § 33-1101 et seq., and execution on Costa's condominium was therefore not barred by statute.[2]  *See* § 33-1256(C).  This portion of Costa's Complaint must be dismissed.

### C.     Count 3

Costa's final cause of action asserts numerous violations of 15 U.S.C. § 1692f, which forbids "unfair or unconscionable means to collect or attempt to collect any debt."  The court will consider each of those alleged violations under the "least sophisticated debtor" standard.  *See McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011) (applying "least sophisticated debtor" test to § 1692f claims).

#### 1.     Duplicative claims

Most of Costa's § 1692f claims merely duplicate claims alleged in his § 1692g(a) and § 1692e causes of action.  First, Costa alleges Maxwell & Morgan violated § 1692f by "sending judgment collection letters that fail to specify the amount owed" and sending "a letter payment of a debt 'in full' that deliberately obfuscates the specific amount owed in order to pay said debt 'in full.'"  (Doc. 1 at 14-15.)  For the reasons explained above, *see supra* Part III.A, Maxwell & Morgan's September 9, 2014 letter did not adequately inform Costa how much money he should submit in order to pay off his debt.  Attempting to collect a debt without specifying the size of that debt is "unfair" within the meaning of § 1692f.  This claim must survive.

Second, Costa asserts the following conduct is prohibited by § 1692f: "increasing the amount due in judgment collection letters to include amounts that have not been

---

[2] Accordingly, it is unnecessary to consider whether Maxwell & Morgan's failure to notify Costa of the homestead exemption in its September 9, 2014 letter violated the FDCPA, as Costa insists it did in his Response.  (*See* Doc. 16 at 12.)  In any event, even if this omission did violate the FDCPA, Costa has not alleged as much in his Complaint.  (*See* Doc. 1 at 12-14.)

lawfully incurred and that are otherwise not authorized or prohibited by Arizona law, including but not limited to A.R.S. 12-1598.07(E)"; "including language in default or uncontested judgments purporting to entitle them to recover reasonable attorneys' fees and costs incurred after the entry of the judgment, unilaterally determining the amount of those post-judgment attorneys' fees and costs that it is entitled to recover, and adding those amounts to the debts without any judicial oversight or involvement"; and "[u]nilaterally increas[ing] the amount of a judgment to add unadjudicated attorneys' fees and costs that have not been awarded or determined by any court to be reasonable." (Doc. 1 at 14-15.)  As far as the court can tell, these separate allegations are duplicative both of one another and of Costa's second § 1692e claim.  The court has previously explained that Arizona law does not permit a judgment creditor to execute on a liability for future attorneys' fees until the amount is adjudicated by the court.  *See supra* Part III.B.2.  Costa has therefore stated a claim under § 1692f.

Third, Maxwell & Morgan allegedly engaged in "unfair or unconscionable" debt collection practices by "filing foreclosure actions, obtaining default or uncontested foreclosure judgments, and executing or attempting to execute on default or uncontested foreclosure judgments where the unpaid principal balance of assessments includes amounts that were previously reduced to a money judgment and are secured by a judgment lien."  (Doc. 1 at 14.)  This restates Costa's fourth § 1692e claim.  For the reasons explained above, these allegations do not state a claim under § 1692f and must therefore be dismissed.  *See supra* Part III.B.4.

Fourth, Costa alleges Maxwell & Morgan "[t]hreaten[ed] to seize a debtor's personal property as part of a foreclosure of the debtor's residence."  (Doc. 1 at 15.)  Notwithstanding court supervision, seeking to execute on Costa's personal property without legal authority was improper.  *See supra* Part III.B.3.  This § 1692f claim cannot be dismissed.

1

### 2.    Failure to respond to inquiries

2       In addition, Costa seeks relief under § 1692f because Maxwell & Morgan

3   allegedly failed "to inform the debtor [of] the amount owed when the debtor inquire[d] as

4   to the true amount of the debt."  (Doc. 1 at 15.)  Nowhere in the Complaint does Costa

5   allege that he asked Maxwell & Morgan to clarify the true amount of his debt.  The only

6   communication the Complaint alleges from Costa to the firm is his November 6, 2014

7   cashier's check.  The letter accompanying that check announces that the check constitutes

8   payment in full; it does not seek information about any outstanding portion of the debt.

9   Accordingly, this portion of Costa's third cause of action must be dismissed.

10

### 3.    Disregard of statutory limitations

11       Finally, Costa maintains Maxwell & Morgan's Superior Court complaint was

12   premature under that portion of **A.R.S. § 33-1256(A) that permits foreclosure of an**

13   **assessment lien** "only if the owner has been delinquent in the payment of monies secured

14   by the lien, excluding reasonable collection fees, reasonable attorney fees and charges for

15   late payment of and costs incurred with respect to those assessments, for a period of one

16   year or in the amount of one thousand two hundred dollars or more, whichever occurs

17   first."  *See supra* note 1.  According to Costa, at the time the Justice Court entered the

18   Default Judgment, which awarded Maxwell & Morgan all unpaid assessments through

19   the end of 2014, those debts merged into the Default Judgment.  *See C & J Travel*, 161

20   Ariz. at 36-37, 775 P.2d at 1100-01.  Therefore, on Costa's view, there was no

21   "delinquent" debt at the time Maxwell & Morgan filed the Superior Court action in

22   October 2014, with the result that neither the one-year nor the $1,200 threshold in § 33-

23   1256(A) had been satisfied.  Because the Superior Court complaint was "patently

24   frivolous" (Doc. 16 at 14), Costa believes it qualifies as an "unfair or unconscionable

25   means to collect or attempt to collect any debt," § 1692f.

26       This contention merely repackages Costa's election-of-remedies argument,

27   discussed and rejected above.  *See supra* Part III.B.4.  Although Maxwell & Morgan had

28   already sued for and received a judgment on the underlying debt, the Superior Court

action sought to foreclose instead on Costa's lien.  It is therefore irrelevant that the debt itself may have merged into the Default Judgment.  Merger or not, Costa was still "delinquent in the payment of monies secured by the lien."  That a debt has merged does not mean it is no longer delinquent; it merely means a creditor is unable to sue directly on that debt.  This § 1692f claim fails as a matter of law and will be dismissed.

### 4.    Redemption period

Costa alleges in his Response that Maxwell & Morgan violated § 1692e and § 1692f by praying the Superior Court to reduce the statutory redemption period following the sale of his condominium.  (*See* Doc. 16 at 15-16.)  In fact, the Superior Court complaint requests a thirty-day redemption period only if "the Court determines that the Property is not now and has not been used at any time pertinent hereto primarily for agricultural or grazing purposes and has been abandoned."  (Doc. 21-1 at 23.)  It expressly provides that unless those facts are present, "the redemption period is six (6) months."  (*Id.*)  Such a request cannot be considered "unfair or unconscionable."  In any event, this allegation is not pled in the Complaint, and thus there is nothing for the court to dismiss.  (*See* Doc. 1 at 11-15.)

It is clear from Costa's First Amended Complaint (Doc. 21) that none of his deficient claims could be cured through an amended pleading, with the possible exception of his allegation that Maxwell & Morgan failed to respond to his inquiry regarding the true amount of his debt.  *See supra* Part III.C.2.  Accordingly, Costa will be granted leave to amend his First Amended Complaint by June 9, 2015, to plead sufficient facts on that cause of action.

IT IS THEREFORE ORDERED that Defendant Maxwell & Morgan's Motion to Dismiss (Doc. 10) is granted to the extent that Costa has failed to state a claim (1) under § 1692e or § 1692f for attempting to foreclose on assessments that were previously reduced to judgment, (2) under § 1692e for disregarding Arizona's "homestead

exemption," and (3) under § 1692f for (a) failing to respond to Costa's inquiries regarding the amount of his debt or (b) ignoring A.R.S. § 33-1256(A)'s one-year and $1,200 thresholds.  The Motion is otherwise denied.

IT IS FURTHER ORDERED that Plaintiff Allan Costa is granted leave to amend his First Amended Complaint (Doc. 21) by June 9, 2015.  If by that date Costa has not submitted a second amended complaint, Maxwell & Morgan shall file an answer to the First Amended Complaint no later than June 23, 2015.

Dated this 3rd day of June, 2015.

Neil V. Wake
United States District Judge